## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 24-cr-578 (JEB)** |
| **v.** | |
| **MICHAEL SNOW, JR.,** | |
| **Defendant.** | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

On July 24, 2024, the defendant, Michael Snow, Jr., came to Washington, D.C., where he and others destroyed government property in Columbus Circle, causing upwards of $11,000 in damage. For the following reasons, the government requests that the Court sentence the defendant to one year of probation, with a condition that he stay away from Federal museums and monuments and pay restitution in the amount of $525.

## BACKGROUND

Several groups applied for and were granted permits to demonstrate on the National Mall on July 24, 2024. An organization was granted a sole permit for the area of Columbus Circle, which is located at the intersection of Massachusetts Avenue Northeast and E Street Northeast, Washington, D.C., directly in front of Union Station. In anticipation of the demonstrations, members of the U.S. Park Police ("USPP"), U.S. Capitol Police ("USCP"), and the Metropolitan Police Department ("MPD") were present around Columbus Circle and other parts of downtown Washington, D.C.



*Figure 1: Picture of Columbus Circle, Including the Fountain and Three Flagpoles*

Demonstrators began to gather in Columbus Circle starting at approximately 2:50 p.m.   At approximately 3:26 p.m., the USPP revoked the permit that had been issued to the organization. Pursuant to regulation, organizers must undertake, in good faith, all reasonable action to provide sufficient "marshals" to ensure good order and self-discipline during the demonstration.   *See* 36 CFR 7.96 (g)(5)(xii).   The USPP attempted to locate the organization's marshals multiple times but were unable to find them.   At approximately 3:26 p.m., a USPP lieutenant called the individual permit holder.   The permit holder failed to answer his phone and the call went directly to voicemail.   The USPP lieutenant left a voicemail officially revoking the organization's permit.

Despite the revocation of the permit, demonstrators, including the defendant, remained in and around Columbus Circle until approximately 5:00 p.m.   From approximately 2:59 p.m. until 5:00 p.m., individuals in Columbus Circle pulled down flags affixed to the flagpoles; burned flags and objects; interfered with law enforcement's ability to place individuals under arrest; and sprayed graffiti on multiple statutes and structures.

2

The defendant partook in the destruction by lighting a flag on fire, which was property of the U.S. government, that had been hauled down from the flagpole in Columbus Circle.

Specifically, a little after 3:00 p.m., two individuals lowered an American flag affixed to the eastern flagpole in Columbus Circle.



*Figure 1: Screenshot from Open-Source Footage of Two Individuals Lowering the American Flag in Columbus Circle*

After being lowered, the flag fell to the ground, still attached to the halyard by snap hooks. At approximately 3:14 p.m., the defendant grabbed the flag and carried it into the crowd of protesters.



*Figure 3: Screenshot from USCP CCTV of the Defendant (circled in yellow) Grabbing the Flag from the Halyard*



*Figure 4: Screenshot from Open-Source Footage Showing the Defendant Holding the Flag after Removing it from the Halyard.*

After throwing the flag onto the ground, the defendant produced a lighter and held it up to the flag in an apparent effort to light the flag on fire.   The defendant was initially unsuccessful and yelled to the crowd: "I need a better lighter!"   Individuals surrounding the defendant were chanting "Burn that shit!"



*Figure 5A: Screenshot from Open-Source Footage of the Defendant's Initial Attempt to Light the Flag on Fire*



*Figure 5B: Zoomed in Screenshot from Open-Source Footage of the Defendant's Initial Attempt to Light the Flag on Fire*

After the failed attempt to light the flag on fire, an unidentified individual shouts, "lighter fluid!"   An unidentified individual then handed the defendant a white bottle with red top, which was determined to be "Weis Simply Great Lighter Fluid Charcoal".



*Figure 7: Screenshot from Open-Source Footage of SNOW Taking Lighter Fluid from Unidentified Individual*



*Figure 8: Image from Weis.com of Weis Simply Great Lighter Fluid Charcoal*

After receiving the bottle of lighter fluid, the defendant doused the flag with liquid from the bottle.



*Figure 9: Screenshot from Open-Source Footage Showing the Defendant*
*Dousing the Flag with Lighter Fluid*

An unidentified individual tossed the defendant what appeared to be a butane jet lighter.

Another individual ("SUSPECT 2") approached the flag and produced another lighter.   Both the

defendant and SUSPECT 2 used their lighters to ignite the lighter fluid and set the flag on fire.



*Figure 10: Screenshot from Open-Source Footage of the Defendant and SUSPECT 2*
*Lighting the Flag on Fire*

7



*Figure 11: Screenshot from Open-Source Footage of the Defendant (Circled in Yellow) and SUSPECT 2 (Circled in Blue) Holding Lighters to the Flag*



*Figure 12: Screenshot from Other Open-Source Footage of the Defendant (Circled in Yellow) and SUSPECT 2 (Circled in Blue) Lighting Flag on Fire*

After setting the flag on fire, the defendant stepped back to stand on the steps of the flag pedestal while SUSPECT 2 paraded around the burning flag.



*Figure 13: Screenshot from Open-Source Footage Depicting the Defendant (Circled in Yellow) on the Flag Pedestal while SUSPECT 2 (Circled in Blue) Paraded Around the Burning Flag.*

The statutes, structures, flagpoles, and flags in Columbus Circle are all property of the federal government.   The National Park Service estimated that the total cost to clean up and repair the site was approximately $11,282.23.[1]   The cost of the American flag that was burned by the defendant is $525.00.   (ECF No. 14 at 3).

---

[1]     The National Park Service estimated the cost of damage by aggregating the cost of the products purchased for cleanup (approximately 10 gallons of graffiti remover at $97.60 per gallon), $250 worth of rollers and cleaning brushes, as well as the labor costs associated with removal.

On December 6, 2024, the defendant was charged by complaint with one count of Destruction of Property (Less than $1,000), in violation of 18 U.S.C. § 1361.   On February 11, 2025, the defendant pled guilty to that count pursuant to a plea agreement (ECF No. 13).   In exchange, the government agreed not to pursue additional charges related to the conduct in the Statement of Offense (ECF No. 14) and agreed to cap its allocution at a probationary sentence and restitution.   This sentencing memorandum follows.

## ARGUMENT

### I.   THE APPLICABLE SENTENCING GUIDELINES

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."   *United States v. Gall*, 552 U.S. 38, 49 (2007).   Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018).   The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors.   *Gall v. United States*, 552 U.S. 38, 49–50 (2007).   The Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).

In this case, the parties and U.S. Probation agree that the defendant's sentencing guideline calculation is as follows:

| Guideline Calculation | | |
|---|---|---|
| Base Offense Level | 6 | U.S.S.G. § 2B1.1 |
| Acceptance of Responsibility | -2 | U.S.S.G. § 3E1.1 |
| Zero-Point Offender | -2 | U.S.S.G. § 4C1.1 |
| **Total:** | **2** | |

ECF No. 13 (Plea Agreement), 16 (Final Presentence Investigation Report "PSIR").

Because the defendant has no criminal history, he has a criminal history category of I. With a total offense level of 2, and a criminal history category of I, the applicable guidelines' range is 0 to 6 months' imprisonment. The Guideline range for supervised release is one year, U.S.S.G. § 5D1.2(a)(3), and the applicable fine is $200 to $9,500. U.S.S.G § 5E1.2.

## II. SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

In addition to the Guidelines, sentencing is further guided by 18 U.S.C. § 3553(a). Notably, the Sentencing Guidelines are only "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). They "are not the only consideration." *Id.* A sentencing judge "should . . . consider all of the § 3553(a) factors," and "[i]n so doing, . . . may not presume that the Guidelines range is reasonable." *Id.* at 50. As described more fully below, on balance, the Section 3553(a) factors weigh in favor of a probationary sentence.

### A. Nature and Circumstances of the Offense

The defendant traveled to Washington, D.C. on July 24, 2024, presumably to partake in First Amendment protected activity. However, that demonstration devolved and culminated in the defendant destroying government property—in this case, by burning a flag pulled down from a flagpole in Columbus Circle. Video footage of Columbus Circle that day depicts a crowd whose mood turned riotous—with individuals defacing and burning government property and verbally and physically assaulting police. And while there is no evidence that the defendant took any

action against police, it was clear that the situation was out of hand and that the police were outnumbered and unable to stop the destruction.   Instead of leaving when the protest turned riotous, the defendant remained and contributed.

The destruction of government property cannot be condoned; however, the defendant's relative role was minor, and he did not engage in violence against police.   For that reason, the government submits the nature of the offense favors a probationary sentence.

### B.  History and Characteristics of the Defendant

As laid out in the PSIR (ECF No. 16), the defendant has no prior criminal history.   The defendant reports having a college degree, living in stable housing, and being gainfully employed. According to Pretrial Services, the defendant has remained compliant with his conditions of release.   Further, the defendant quickly accepted responsibility for his conduct in this case by agreeing to plead guilty.   Given the defendant's lack of criminal history and acceptance of responsibility, the history and characteristics of the defendant weigh in favor of a sentence that does not involve incarceration.

### C.  Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The defendant is charged with one count of Destruction of Property (Less Than $1,000)— a misdemeanor.   Relative to the other crimes committed on July 24, 2024, including assaulting police officers and more severe destruction of property, the defendant's actions were minor. Thus, a probationary sentence of one year is sufficient and proportionate to the seriousness of the offense and provides a just punishment.

### D.  The Need for the Sentence to Afford Adequate Deterrence

The requested probationary sentence is sufficient but no greater than necessary to meet the

goals of sentencing.   The need for general deterrence in this case is significant.   In Washington,

D.C., demonstrations take place every day.   By and large, those demonstrations are peaceful.

However, the potential for escalation to destruction of property or violence is always present where

large groups come together, and the more extreme tactics of certain individuals are fueled by the

riot mentality.   But the Court should also consider the need for specific deterrence.   In this case,

as to this specific defendant, the underling conduct appears aberrant.   *See generally* ECF No. 16.

The government is reassured by the defendant's early acceptance of responsibility and considers a

probationary sentence sufficient to specifically deter the defendant and generally deter others from

partaking in this type of criminal activity in the future.

### III.    RESITUTION

Under 18 U.S.C. § 3556, a sentencing court must determine whether and how to impose

restitution in a federal criminal case.   Because a federal court possesses no "inherent authority to

order restitution," *United States v. Fair*, 699 F.3d 508, 512 (D.C. Cir. 2012), it can impose

restitution only when authorized by statute, *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C.

Cir. 2011).   First, the Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291

§ 3579, 96 Stat. 1248 (now codified at 18 U.S.C.  § 3663), "provides federal courts with

discretionary authority to order restitution to victims of most federal crimes."   *Papagno*, 639 F.3d

at 1096; *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).

Second, the Mandatory Victims Restitution Act ("MVRA"), Pub. L. No. 104-132 § 204, 110

Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving

a subset of the crimes covered" in the VWPA.   *Papagno*, 639 F.3d at 1096.   The MVRA applies

to certain offenses including those "in which an identifiable victim or victims has suffered a

physical injury or pecuniary loss," 18 U.S.C. § 3663A(c)(1)(B), a "crime of violence," § 3663A(c)(1)(A)(i), or "an offense against property . . . including any offense committed by fraud or deceit," § 3663A(c)(1)(A)(ii).  *See Fair*, 699 F.3d at 512 (citation omitted).  Here, the defendant was convicted of violating an offense under Title 18; accordingly, the VWPA applies.

The applicable procedures for restitution orders issued and enforced under these two statutes is found in 18 U.S.C. § 3664.  *See* 18 U.S.C. § 3556 (directing that sentencing court "shall" impose restitution under the MVRA, "may" impose restitution under the VWPA, and "shall" use the procedures set out in Section 3664).

Both [t]he VWPA and MVRA require identification of a victim, defined in both statutes as "a person directly and proximately harmed as a result of" the offense of conviction. *Hughey v. United States*, 495 U.S. 411, 418 (1990) (interpreting the VWPA).  Both statutes identify similar covered costs, including lost property and certain expenses of recovering from bodily injury.  *See Papagno*, 639 F.3d at 1097-97; 18 U.S.C. §§ 3663(b), 3663A(b).  Finally, under both the statutes, the government bears the burden by a preponderance of the evidence to establish the amount of loss suffered by the victim. *United States v. Bikundi*, 926 F.3d 761, 791 (D.C. Cir. 2019).

In deciding whether to impose restitution under the VWPA, the sentencing court must take account of the victim's losses, the defendant's financial resources, and "such other factors as the court deems appropriate."  *United States v. Williams*, 353 F. Supp. 3d 14, 23-24 (D.D.C. 2019) (quoting 18 U.S.C. § 3663(a)(1)(B)(i)).  The MVRA, by contrast, requires imposition of full restitution without respect to a defendant's ability to pay.[2]

---

[2] Both statutes permit the sentencing court to decline to impose restitution where doing so will

Here, the evidence shows that the defendant destroyed government property by burning a flag that had been affixed to a flagpole in Columbus Circle.  Thus, the defendant's criminal conduct was a "proximate cause" of the victim's loss—in this case, the destruction of the flag—if not a "cause in fact," and the Court has discretion to apportion restitution and hold the defendant responsible for his individual contribution to the victim's total loss.  *See Paroline v. United States*, 572 U.S. 434, 458 (2014) (holding that in aggregate causation cases, the sentencing court "should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses"); *see also United States v. Monzel*, 930 F.3d 470, 476-77, 485 (D.C. Cir. 2019) (affirming $7,500 in restitution toward more than a $3 million total loss, against a defendant who possessed a single pornographic image of the child victim; the restitution amount was reasonable even though the "government was unable to offer anything more than 'speculation' as to [the defendant's] individual causal contribution to [the victim's] harm"; the sentencing court was not required to "show[] every step of its homework," or generate a "formulaic computation," but simply make a "reasoned judgment.").  More specifically, the Court should require the defendant to pay $525 in restitution, which reflects the cost to replace the flag that the defendant destroyed by burning.

---

"complicat[e]" or "prolong[]" the sentencing process.  *See* 18 U.S.C. §§ 3663(a)(1)(B)(ii), 3663A(c)(3)(B).

## **CONCLUSION**

For all of the foregoing reasons, the Government requests a sentence of one year of probation, with a continued stay-away from federal museums and monuments, and restitution.

Respectfully submitted,

EDWARD R. MARTIN, JR.
UNITED STATES ATTORNEY
D.C. Bar No. 481866


By:        */s/ Sarah Martin*_____
Sarah Martin
Assistant U.S. Attorney
United States Attorney's Office for the
District of Columbia
Bar No. 1612989
Sarah.Martin@usdoj.gov
(202) 252-6775

16